UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| ULYSSES PATTERSON,<br>EDWARD BUZAK,<br>CHARLES HARRY,<br>CARL PHINNEY,<br>ANTOHNY RONGO,<br>DAVID FERRIS and<br>ROBERT GARLOCK,<br><br>        Plaintiffs,<br><br>-vs-<br><br>THE BARDEN & ROBESON CORPORATION,<br><br>        Defendant. | 04-CV-0803E(Sc)<br><br>MEMORANDUM<br><br>and<br><br>ORDER[1] |

---

## INTRODUCTION

Plaintiffs commenced this suit (Dkt. #1) on October 5, 2004 alleging, *inter alia,* that the failure of defendant The Barden & Robeson Corporation ("Barden") to properly manage stormwater runoff associated with their construction activities was in violation of the Clean Water Act ("CWA")[2] and seeking statutory injunctive relief and civil penalties thereon. The complaint also contains numerous state court claims such as public and private nuisance, trespass and negligence and seeks declaratory

---

[1] This decision may be cited in whole or in any part.

[2] The CWA regulates and monitors the discharge of toxins into the waterways of the United States. 33 U.S.C. §§1251-1387 (2001). To achieve this, the Administrator of the Environmental Protection Agency ("EPA") or authorized state agencies (the New York State Department of Environmental Conservation — "DEC", for example), are empowered to issue National Pollutant Discharge Elimination System ("NPDES") permits. 33 U.S.C. §1342. Permit holders are subject to state and federal enforcement actions, as well as suits by private citizens. *See* 33 U.S.C. §§1319 & 1365(authorizing state enforcement and citizen suits, respectively).

and injunctive relief and money damages for damage to plaintiffs' real and personal properties. The gravamen of both the state and federal claims relate to Barden's construction activities and the failure to obtain coverage under, and comply with the conditions of, the State Pollutant Discharge Elimination System ("SPDES") Permit for Stormwater Discharges from Construction Activity.[3] Barden filed an answer with a counterclaim on October 28, 2004 alleging trespass (Dkt. #3). Plaintiffs/counterclaim-defendants filed a reply to the counterclaim on November 16, 2004 (Dkt. #7).

Pending before the Court is Barden's motion for summary judgment (Dkt #21). Plaintiffs have responded, Barden has replied, the parties have presented oral argument and the matter was submitted to the Court for decision on April 7, 2006.

## **BACKGROUND**

The following facts are not in dispute, except for those facts that the Court notes are "claimed" by one party or the other. Plaintiffs are residents of the Lincoln Woods Subdivision in the Town of Lockport. Although the subdivision was first developed in the mid-1970's, sometime between 1992 and 1994, Barden acquired a portion what remained undeveloped, renamed it Meadow Lake Subdivision, and obtained Town approval for a revised subdivision plan containing a number of "estate lots" and a pond located due east of the plaintiffs' properties. Construction on this new subdivision began in 2002.

---

[3]A SPDES permit is the DEC's state equivalent of the EPA's NPDES permit. *See* fn.2.

A letter from the Niagara County Health Department, Environmental Health Division, dated October 2, 2002, notified Barden of its obligations to file a "Notice of Intent, Termination and Transfer" with the New York Department of Environmental Conservation ("DEC") in order to apply for and be issued the required SPDES General Permit for Stormwater Discharges from Construction Activity from the DEC for the site. Barden did not file the Notice or obtain the permit.

Plaintiffs claim that Barden's failure to properly manage stormwater runoff from construction and the ineffective and poor design of the pond violate the CWA and have caused injury to their properties, principally in the form of flood damage. Plaintiffs further claim that the circumstances under which they obtained (or neglected to obtain) the SPDES permit are evidence of this failure — to wit, they commenced ground disturbing activities without the proper permit, continued these activities after being directed by the DEC to cease, made false and misleading representations in eventually obtaining the permit and thereafter violated the terms under which the permit was issued, all of which are also alleged to be in violation of the CWA.

Plaintiffs claim that a DEC representative performed an on-site inspection at Meadow Lake in August 2003, discovered that Barden did not have the requisite SPDES permit and requested to see a copy of Barden's Storm Water Pollution Prevention Plan ("SWPPP") (which is apparently required in the absence of the permit, as part of the application process for the permit) which Barden represented

it had. Plaintiffs claim that Barden failed to produce the SWPPP and the DEC neglected to follow up on the matter.

Nearly one year later, in July 2004, the DEC performed another on-site inspection at Meadow Lake resulting in a formal Notice of Violation ("NOV") being issued to Barden for SPDES violations. The NOV cited Barden's failure to obtain the SPDES permit prior to beginning ground disturbing operations and discharging sediment into the storm sewer system. It also required that Barden cease all ground disturbing operations until they obtained such permit and required that they file a Notice of Intent ("NOI") to begin the application process to obtain the coverage.

Shortly thereafter, Barden's engineers sent a letter to the DEC containing a NOI and a two paragraph SWPPP seeking deviation from the DEC's technical standards. Plaintiffs claim that the NOI and SWPPP were insufficient in that the NOI was unsigned, undated and incomplete and the SWPPP was devoid of substance and did not comply with the requirements of the CWA. The NOI was revised in August insomuch as it included the signature and dates missing from the original. Plaintiffs claim that Barden backdated this document and made numerous false statements with respect to previously constructed stormwater management infrastructure (from the original Lincoln Woods subdivision) which either did not exist or did not provide any drainage for the new Meadow Lake subdivision. During this time the SWPPP was also revised in response to DEC comments regarding what needed to be addressed prior to approval being given and the permit issued. The last revision was on November 10, 2004 and the permit was issued, effective November 19, 2004.

All during this time, Barden continued ground disturbing operations. While this was noted in a report from an August 24, 2004 DEC inspection which indicated Barden's compliance status with the application process as unsatisfactory, no further NOV's were issued by the DEC.

Despite the issuance of the permit, plaintiffs claim that Barden has been in a persistent state of violation of the CWA as evidenced by the permit process outlined above, subsequent events indicating failure to implement the SWPPP and additional or continuing SPDES permit violations, including but not limited to ineffective/improper use of silt fencing and hay bales necessary for erosion control, improper lot levels and seeding of a berm and other areas relative to stabilization, erosion and sediment migration into receiving waters, and failure to perform required weekly inspections by a qualified professional.

Plaintiffs claim that the stormwater associated with Barden's construction activity at Meadow Lake contains "dredged spoil" and other contaminants, and is a "pollutant" as defined by the CWA, which has been discharged by Barden into a waterway of the United States — to wit, Tonawanda Creek. Plaintiffs claim that the stormwater travels through a series of unnamed streams, creeks and ponds and eventually into Tonawanda Creek. The parties seem to agree that Tonawanda Creek is a waterway of the United States as defined by the CWA but Barden claims that there is no outlet into Tonawanda Creek at the end of this series of streams, creeks and ponds into which the construction runoff water flows and therefore the water is not discharged into Tonawanda Creek.

## **DISCUSSION**

In its motion for summary judgment, Barden argues that (1) plaintiffs lack standing because, at the time of the commencement of the suit, Barden had discontinued ground disturbance and was no longer in violation of the CWA, (2) the CWA claim is moot because the DEC exercised its enforcement authority, an order was issued, a penalty imposed and paid and the groundwater plan approved, (3) plaintiffs have failed to prove that Barden discharged pollutants into the navigable waters of the United States and has failed to prove an injury in fact traceable to Barden as required by statute, (4) the separation of powers doctrine bars this CWA citizens' suit, and (5) if the CWA claim is to be dismissed, the Court no longer has jurisdiction over the state law claims, requiring dismissal of the entire action.

The Court cites current authority for the same familiar standard:

> "$_{***}$ [S]ummary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." *D'Amico* v. *City of New York*, 132 F.3d 145, 149 (2d Cir.1998). A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *R.B. Ventures, Ltd.* v. *Shane,* 112 F.3d 54, 57 (2d Cir.1997). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the moving

> party. *United States* v. *Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam); *Donahue* v. *Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987)."

*Beth Israel Medical Center* v. *Horizon Blue Cross and Blue of New Jersey, Inc.,* 448 F.3d 573, 579 (2d Cir. 2006); *see also GlobalNet Financial.Com, Inc.* v. *Frank Crystal & Co., Inc.,* 449 F.3d 377, 382 (2d Cir. 2006).  In response to a properly supported summary judgment motion, the party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but $_{***}$ must set forth specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e); *GlobalNet Financial.Com, supra*; *see also Kerzer* v. *Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir.1998) ("conclusory allegations, conjecture and speculation $_{***}$ are insufficient to create a genuine issue of fact").  Furthermore, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.* v. *Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548 (1986).

### **The CWA Claim**

As mentioned above, Barden urges this Court to grant summary judgment dismissing the CWA claim for a number of reasons — to wit, plaintiffs lack standing, the claim is moot, plaintiffs failed to establish an essential element of the claim, *i.e.,*

that Barden discharged pollutants into navigable U.S. waters, and because a CWA citizen's suit is barred by the doctrine of separation of powers.

It is undisputed that 33 U.S.C.§1342 required Barden to obtain a SPDES permit for the stormwater runoff from its construction site at Meadow Lake.  Further, 33 U.S.C.§1365(a)(1) allows a citizen (*i.e.*, plaintiffs) to sue anyone who is alleged to be in violation of an effluent standard or limitation or an order issued by the Administrator (EPA) or a State (DEC) with respect to such a standard or limitation. The term "effluent standard or limitation" is defined as, *inter alia*, "a permit or condition thereof issued under section 1342 of this title" 33 U.S.C.§1365(f)(6).  As such, plaintiffs herein can clearly bring suit against Barden for its failure to obtain the permit and for violating any condition of the permit once issued. *See also, Sierra Club, Lone Star Chapter* v. *Cedar Point Oil Co. Inc.,* 73 F.3d 546, 559 (5th Cir.), *cert. denied*, 519 U.S. 811, 117 S.Ct. 57(1996) (Discharge of any "pollutant" without a NPDES — or, as the case may be, a SPDES — permit is an unlawful act under the CWA and, thus, may be basis of a CWA citizen suit).  Barden, however, argues that a citizen's right to bring a CWA action is limited in that it is intended to supplement government action and is allowed only "if the Federal, State, and local agencies fail to exercise their enforcement responsibility." *Citing Gwaltney of Smithfield, Ltd.* v. *Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 60, 108 S.Ct. 376 (1987).

The primary basis for Barden's arguments relative to both standing and mootness relate to this issue of enforcement responsibility. It is well settled that, the constitutional standard for standing contains three essential elements — to wit, the

plaintiffs herein must have (1) suffered a concrete actual or imminent injury, (2) reasonably traceable to the challenged action of the defendant, (3) that is likely to be redressed by a favorable decision. *Bennett* v. *Spear*, 520 U.S. 154, 162, 117 S.Ct. 1154 (1997); *Lujan* v. *Defenders of Wildlife,* 504 U.S. 555, 560-561, 112 S.Ct. 2130 (1992); *Baur* v. *Veneman*, 352 F.3d 625, 631 - 32 (2d Cir. 2003). Further, the CWA allows a citizen to bring a lawsuit against anyone "who is alleged to be *in violation*" of the Act. 33 U.S.C. §1365(a)(1) (emphasis added). This means that, in order to have standing to sue herein, plaintiffs must establish that Barden was in violation of the CWA *at the time of the filing of the suit* and cannot be based solely on past violations or harm. *Gwaltney of Smithfield, Ltd.* v. *Chesapeake Bay Foundation, Inc.*, 484 U.S.49, 108 S.Ct.376 (1987); *see also, Steel Co.* v. *Citizens for a Better Env't.*, 523 U.S. 83, 106-07, 118 S.Ct. 1003 (1998) (citizen plaintiffs lack standing to seek civil penalties for wholly past violations).

The suit herein was commenced on October 5, 2004. The permit at issue was obtained on November 19, 2004. Clearly, Barden had not obtained the requisite permit by the time the suit was filed and was *in violation* of the CWA on that basis. *Accord, Molokai Chamber of Commerce* v. *Kukui (Molokai) Inc.,* 891 F.Supp. 1389, 1400 (D. Hawaii 1995)(defendants were held to be in violation of the Act because they lacked a permit at the time the suit was filed).

Barden claims that, because they were involved in enforcement proceedings with the DEC, had ceased all ground disturbing construction activities (which plaintiffs dispute) and were in the process of obtaining the required permit, they

were therefore no longer *in violation* of the CWA. This, Barden argues, renders plaintiffs without standing because they are seeking to redress what now amounts to purely past violations. *Accord, Ailor* v. *City of Maynardville*, 368 F.3d 587 (6th Cir. 2004). This argument misses the mark. Barden's arguments regarding the DEC enforcement proceeding, ceasing ground disturbing activities and the like relate to an examination of mootness and will be addressed, *infra*.[4]

Barden also argues that plaintiffs lack standing because they cannot prove an injury-in-fact fairly traceable to Barden's actions. In this regard, Barden points to the lack of evidence of actual contamination of Tonawanda Creek tied to plaintiffs' injuries, or an actual interest in Tonawanda Creek held by plaintiffs such as contaminated drinking water from the creek being supplied to plaintiffs' homes, for example[5]. Plaintiffs have alleged that the water from the Meadow Lake site flowed to their properties causing damage (injury) thereto, bringing with it sediment and other pollutants (regulated by the CWA) on its way to Tonawanda Creek. They have provided evidence of this. "The relevant showing for purposes of Article III standing \*\*\* is not injury to the environment but injury to the plaintiff. To insist upon the former rather than the latter as part of the standing inquiry \*\*\* is to raise the

---

[4]The standards with respection establishing standing and establishing mootness are substantially different and it is therefore important to analyze the facts relative to each in the correct context. *See, Friends of the Earth, Inc.* v. *Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 181, 120 S.Ct. 693 (2000) (The plaintiff has the burden of establishing standing while the party asserting mootness - Barden - bears the heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to recur).

[5]A claim which plaintiffs have abandoned.

standing hurdle higher than the necessary showing for success on the merits in an action alleging noncompliance with an NPDES permit." *Friends of the Earth, Inc.* v. *Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 181, 120 S.Ct. 693 (2000). Plaintiffs have also submitted evidence that the stormwater from the site flowed to their properties because of Barden's construction activities and persistent CWA violations with respect to, *inter alia,* the poorly designed pond, ineffective berm, swales, ditches and erosion control measures and lack of silt fencing. Upon a review of the record herein, this Court finds that plaintiffs have sufficiently alleged an injury-in-fact fairly traceable to Barden's actions. *See, Parker* v. *Scrap Metal Processors, Inc.,* 386 F.3d 993, 1003 - 1004, *reh'g and reh'g en banc denied*, 125 Fed. Appx. 979 (11th Cir. 2004) ("Mrs. Parker demonstrated an injury-in-fact by showing that water runoff originating on the defendants' property caused hazardous substances, such as PCBs and lead, to migrate onto the Parker property, where the substances contaminated the soil and eventually made their way to the stream. This injury is fairly traceable to the defendants' alleged failure to obtain or comply with their National Pollutant Discharge Elimination System ("NPDES") permit."). Summary judgment on this ground is therefore denied.

*Mootness*

Barden also argues that the CWA claim is moot because the DEC has exercised its enforcement authority, such enforcement process has concluded, there is no likelihood of recurrence and, nevertheless, the claim is moot because no remedy lies.

These are some of the same contentions set forth in the standing argument. With respect to mootness, however, Barden essentially claims that they demonstrate that injunctive relief is no longer available because Barden obtained the permits and, in any event, has now completed its ground disturbing activities. Further, no remedy lies because the injury for which plaintiffs seek monetary damages relate only to the state trespass and nuisance claims (property damage from the water overflow onto their properties and into their basements), not the CWA claim.

The parties do not dispute that the mootness issue must consider the likelihood of recurrence. Barden offers the involvement of the DEC as determinative of the issue and further states that it is plaintiffs' burden to establish that there is a likelihood of recurrence. However, considering the DEC involvement, which includes the enforcement proceedings and the issuance of the permit, does not *per se* end the inquiry regarding recurrence. Plaintiffs offer evidence of such a likelihood of recurrence, in the form of Barden's history of non-compliance as well as it's non-compliance during the entire enforcement and permit proceedings and violations after enforcement proceedings concluded and the permit was issued. For example, plaintiffs presented evidence that Barden did not obtain the permit in the first instance in spite of the County's advice, continued ground disturbing activities despite direction to cease during the pendency of the enforcement proceedings and violation of the permit requirements after its issuance by failing to implement the required erosion control measures along the boundary between plaintiffs' properties and the berm and failure to stabilize the banks of the pond as required. The plaintiffs

have also offered evidence to suggest that the DEC's enforcement proceedings were less than diligent, perhaps ineffective or even perfunctory.  The plaintiffs have raised questions of fact with regard to whether Barden was ever in compliance with the DEC permit process and, hence the CWA.  Based on this the Court also finds that Barden has failed to satisfy its heavy burden that it is "clear that the allegedly wrongful behavior could not reasonably be expected to recur".  *Gwaltney of Smithfield, Ltd.* v. *Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 66-67 (1987)*(Gwaltney I); Friends of the Earth, supra* at 189.  Therefore, summary judgment on the grounds of mootness will not lie.[6]

*Essential elements*

The parties acknowledge that Tonawanda Creek is a waterway of the United States as defined by the CWA and that proving a discharge into a waterway of the United States as an essential element of a CWA claim.  Barden argues that there is

---

[6]Further, even if the matter was moot with respect to the claim for injunctive relief, the claim for civil penalties would persist.  *Atlantic States Legal Foundation, Inc.* v. *Pan American Tanning Corp.,* 993 F.2d 1017, 1018 - 1021 (2d Cir. 1993); *Accord, Comfort Lake Ass'n.* v. *Dresel Contracting, Inc.,* 138 F.3d 351, 354 - 356 (8th Cir. 1998); *Atlantic States Legal Foundation, Inc.* v. *Stroh Die Casting Co.,* 116 F.3d 814, 820 (7th Cir. 1997); *Natural Resources Defense Counsel , Inc.* v. *Texaco Refining & Marketing, Inc.,* 2 F.3d 493, 502 0 503 (3d Cir. 1993); *Carr* v. *Alta Verde Industries*, 931 F.2d 1055, 1065 (5th Cir. 1991); *Atlantic States Legal Foundation, Inc.* v. *Tyson Foods, Inc.,* 897 F.2d 1128, 1134 (11th Cir. 1990); *Chesapeake Bay Found., Inc.* v. *Gwaltney of Smithfield, Ltd.,* 890 F.2d 690, 696 - 697 (4th Cir. 1989)(*Gwaltney III*); *cf., Friends of the Earth, supra* at 190, 193 - 194.  While it does not expressly hold such, some courts have construed *Laidlaw* as calling into question whether post-complaint compliance can moot an entire "case" or merely the claim for injunctive relief.  *E.g., Mississippi River Revival Inc.* v. *City of Minneapolis,* 319 F.3d 1013, 1016 (8th Cir. 2003).  However, *Laidlaw* does state that a court's "[d]enial of injunctive relief does not necessarily mean *** there is no prospect of future violations for civil penalties to deter" 528 U.S. at 193; *see also, Tamaska* v. *City of Bluff City,* 26 Fed.Appx. 482 2002 WL 22003, *3 (6th Cir. 2002) (even if changes/compliance enough to moot the claim for injunctive relief, the claim for civil penalties remains); *Ecological Rights Foundation* v*. Pacific Lumber Co.*, 230 F.3d 1141, 1153 (9th Cir. 2000) (same).

no proof that any water from the Meadow Lake construction site makes it way into Tonawanda Creek, located approximately ten miles away. It also argues that plaintiffs claim must fail because they cannot prove that any pollutants from the Meadow Lake site reached Tonawanda Creek.

It is undisputed that Barden's construction activities were subject to the CWA and that they were required to obtain a SPDES Permit for Stormwater Discharges from Construction Activity. As stated, *supra,* a portion of plaintiffs' CWA claim is based on the lack of that permit and the violation of it and therefore stands on that ground. Further "under the statutory scheme set up by Congress, it is not the court's role to determine whether defendant is polluting the [waterway], rather the court's role to determine whether the FWCPA [CWA] *** has been violated" *Student Public Interest Research Group of New Jersey, Inc.* v. *P.D. Oil & Chemical Storage, Inc.*, 627 F.Supp. 1074, 1083 (D.C.N.J. 1986).

With respect to that portion of plaintiffs' CWA claim that alleges that Barden's failure to properly manage stormwater runoff from the construction and the ineffective and poor design of the pond violate the CWA, Barden is correct in arguing that plaintiffs must establish a genuine question of fact with respect to the essential element of proving a discharge into a waterway of the United States. On this issue, the parties submit duelling expert affidavits.[7] Plaintiffs also submit two NOI's Barden filed with the DEC as part of the permit process wherein Barden itself states that

---

[7]Barden's argument that the Court should not consider plaintiffs' expert evidence is rejected.

stormwater runoff from the Meadow Lake site discharges into Tonawanda Creek. Barden states that those statements were a mistake, later corrected. Based on this, the Court finds that plaintiffs have established a genuine question of fact with respect to whether stormwater runoff from the Meadow Lake site discharges into Tonawanda Creek and whether the water that flowed to their properties was on its way to Tonawanda Creek. Further, plaintiffs have produced evidence from which a reasonable trier of fact could find that, through this stormwater runoff, Barden has discharged and continues to discharge sediment, a pollutant, into Tonawanda Creek, a navigable water. Further, by identifying Barden's construction activity as a source of the discharge, plaintiffs have adequately specified a "point source" within the meaning of the CWA. Barden's motion for summary judgment on the ground plaintiffs failed to identify a point source or produce evidence of the discharge of a pollutant into a navigable water is denied.

*Constitutional Claim*

Barden argues that the CWA violates Article II, section 3 of the United States Constitution, which gives the President of the United States the power to ensure that the laws are faithfully executed (separation of powers doctrine), because it gives "any citizen" the power to bring suit against any alleged violator of the CWA. This, argues Barden, encroaches on the Executive Branch's law enforcement powers. This argument is without legal authority and soundly rejected by this Court.

Courts across the country, including the United States Supreme Court, have long recognized and construed a citizen's right to bring a lawsuit under the CWA without questioning its implication on the separation of powers doctrine. Such questioning will not begin in this Court, especially in light of Barden's fundamental lack of legal support therefor. Dismissal of plaintiff's CWA claim on this ground is denied.

### The State Law Claims

The CWA claim is the only federal claim in this action. The Court has supplemental jurisdiction over the remaining state law claims. Barden urges the Court to decline this supplemental jurisdiction over the state claims in the event that it dismisses the CWA claim. Because the CWA claim has not been dismissed and because the facts relative thereto are also relevant to the trespass and nuisance claims, they will not be dismissed.

### CONCLUSION

Based upon the foregoing, it is hereby **ORDERED** that Barden's motion for summary judgment (Dkt #21) is DENIED.

DATED:   Buffalo, N.Y.

   February 13, 2007

>   */s/ John T. Elfvin*
>   JOHN T. ELFVIN
>   S.U.S.D.J.